**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ANDREW E.[1]                                            Case No. 2:24-cv-276

                    Plaintiff,                                  Bowman, M.J.

          v.


COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.


**MEMORANDUM OPINION AND ORDER[2]**

          Plaintiff Andrew E. filed this Social Security appeal in order to challenge the
Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). For the reasons
explained below, the ALJ's finding of non-disability should be REVERSED and remanded
for further proceedings under Sentence Four.

          **I.  Summary of Administrative Record**

          On March 9, 2021, Plaintiff filed an application for Disability Insurance Benefits
("DIB") or, alternatively, for Supplemental Security Income ("SSI"), alleging that he
became disabled beginning October 15, 2020. (R. 97). After his application for benefits
was denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing
before an Administrative Law Judge ("ALJ").  At a telephonic hearing held on May 25,
2023, Plaintiff appeared with counsel and gave testimony before ALJ Noceeba Southern;

_____

[1]Due to significant privacy concerns in social security cases, the Court refers to claimants only by their first
names and last initials. *See* General Order 22-01.
[2]The parties have consented to disposition before the undersigned magistrate judge. *See* 28 U.S.C. §
636(c).

1

a vocational expert also testified. (R. 20-49). On July 17, 2023, the ALJ issued an adverse written decision. (R 94-105). The Appeals Council denied further review, leaving the ALJ's decision as the final decision of the Commissioner. Plaintiff then filed this judicial appeal.

Plaintiff has a high school education and past relevant work as a letter carrier and in a composite job consisting of carpet cleaner and supervisor, both of which were performed at the heavy or very heavy exertional level. (R. 107). He was 40 years old on the date of his alleged onset of disability, which is considered a "younger individual," and remained in the same age category through the date of the ALJ's decision. He is separated from his wife, with whom he has one son, and lives in a house with his parents. (R. 668, 670). Based on his work history, he met insured status requirements for DIB through December 31, 2024. (Tr. 99).

The ALJ determined that Plaintiff has the following severe impairments: "migraine headaches; obesity; anxiety; depression; and attention deficit hyperactivity disorder (ADHD)." (R. 99). The ALJ also found three non-severe impairments, including "chronic sinusitis, polyneuropathy, and a history of substance abuse disorder." (R.100). In addition, the ALJ noted that Plaintiff had complained of radiating low back pain, but that the back pain was not established as a medically determinable impairment due to a lack of evidence from any acceptable medical source, a lack of abnormal findings on examination, and unremarkable lumbar spine imaging. (*Id*.) The ALJ concluded that none of Plaintiff's impairments, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability. (*Id.*)

Considering all of Plaintiff's impairments, the ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform a range of light work, subject to additional

non-exertional limitations. Specifically, the ALJ held that Plaintiff could not engage in frequent climbing of ramps and stairs and could not crawl, and must

> avoid ladders, ropes, and scaffolds; and avoid hazards, including moving machinery, heavy machinery, and unprotected heights; and avoid concentrated exposure to extreme loud noise (such as jackhammer or heard at a rock concert), extreme bright lights (such as flood lights), and extreme vibration. The claimant should avoid fast paced work such as assembly line work and strict hourly production quotas. The claimant can have occasional but superficial interaction with co-workers and supervisors, with superficial defined as that which is beyond the performance of job duties and job functions for a specific purpose and short duration. The claimant should avoid tandem work and interaction with the public and can tolerate occasional changes and occasional decision-making in a position in which any changes are well-explained in advance and provide a normal ordinary course of time to adjust to such changes. The claimant would be off task 5 percent of the workday.

(R. 103).

Based upon the RFC as determined, the ALJ held that Plaintiff could no longer perform any of his past relevant work. (R. 107). However, the ALJ determined based on vocational expert testimony that Plaintiff could still perform a substantial number of unskilled jobs existing in the national economy, including the representative positions of mail clerk, merchandise marker, and routing clerk. (R. 108). Therefore, the ALJ determined that Plaintiff was not under a disability. (*Id.*)

In this judicial appeal, Plaintiff asserts that the ALJ committed five errors. First, Plaintiff argues that the ALJ committed articulation error when she failed to adequately discuss the consistency and supportability factors in evaluating six different opinions, including the opinions of nonexamining agency physicians and psychologists, an examining psychologist, and Plaintiff's treating mental health practitioner. Second, Plaintiff alleges that the ALJ erred when she failed to explain why she did not adopt certain mental health impairments endorsed by psychologists whose opinions she found to be persuasive. Third, Plaintiff asserts error in the ALJ's substantive reasons for discounting

3

the RFC opinions of a consulting medical examiner. Fourth, Plaintiff asserts error in the ALJ's failure to include additional limitations to sound and light due to migraines, in her determination that Plaintiff would be off task by only 5 percent of the day, and in her articulated definition of "superficial interaction." In his final assertion of error, Plaintiff contends that the combination of errors result in the Commissioner's decision being unsupported by substantial evidence. For the convenience of the Court, the undersigned combines closely related claims and addresses them in a slightly different order.

## II. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

4

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted); *see also Biestek v. Comm'r of Soc. Sec.*, 139 S. Ct. 1148, 1154 (2019) (explaining that "the threshold for such evidentiary sufficiency is not high.")

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920. A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job.  42 U.S.C. § 423(d)(1)(A).

### III. Analysis

Most of Plaintiff's claims focus on the opinion evidence. His first claim asserts that the ALJ violated a mandatory articulation requirement to discuss the "consistency" and "supportability" of six different opinions. His second and fourth claims single out the ALJ's failure to adopt specific limitations endorsed by some of the consulting sources and one treating source. His third claim attacks the ALJ's analysis of one examiner's opinion on more substantive grounds. And his final claim asserts reversible error based on a combination of all other claims. In the interest of judicial economy, the Court reorders Plaintiff's claims to address: (1) the general assertion of articulation error; (2) the assertion of errors related to mental health opinion evidence; and (3) the assertion of errors relating to physical RFC opinions and limitations.

### A. Plaintiff's Broad Assertion of Articulation Error

Current regulations require an ALJ to consider multiple factors when evaluating the persuasiveness of each administrative finding or medical source opinion, with a specific requirement that mandates articulation of how an ALJ considered the "supportability" and "consistency" factors. *See* 20 C.F.R. § 404.51520c. A discussion of supportability focuses on the provider's explanations for his or her opinions, including whether the opinions are supported by relevant objective medical evidence (such as lab results or imaging studies) or other supporting explanations such as clinical observations. 20 C.F.R. § 416.920c(c)(1). Consistency is defined as the extent to which an opinion or finding is consistent with evidence from other medical or nonmedical sources. 20 C.F.R. § 416.920c(c)(2). Plaintiff's first claim is that the ALJ's analysis of the most critical factors – especially "supportability" -  was simply too cursory to uphold her analysis of nearly every opinion that she discussed.

6

It is true that the ALJ's individual analysis of each opinion was brief. But "the regulations that require ALJs to explain their analysis of the supportability and consistency factors do not require those explanations to contain a specific level of detail," and allow for "the appropriate level of articulation …[to] depend on the unique circumstances of each claim." *See Chad T. v. Comm'r of Soc. Sec. Admin.*, Case No. 3:21-cv-00052, 2022 WL 4355001 at *8 (S.D. Ohio Sept. 20, 2022) (quoting Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5854 (Jan. 18, 2017)). Neither a particular length of analysis nor specific "magic words" are required. *See Tracy F. v. Comm'r*, No. 2:23-cv-00188-ALM-SKB, 2023 WL 8614065, at *5 (S.D. Ohio Dec.13, 2023), report and recommendation adopted at 2024 WL 689322 (S.D. Ohio Feb. 20, 2024). In fact, an ALJ need not even use the words "supportability" or "consistency," so long as she has explained how those two "most important" factors were considered in determining the persuasiveness of each opinion. *Id.*, *see also* 20 C.F.R. § 404.1520c(b)(2) (stating we "will explain how we considered the supportability and consistency factors"); *see also Hardy v. Comm'r of Soc. Sec.*, No. 2:20-cv-4097-CMV-JLG, 2021 WL 4059310, at *2 (S.D. Ohio Sept. 7, 2021) (use of words "supportability" and "consistency" not required where opinion adequately addressed both issues).

In addition, courts "will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *See Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). *Contrast Tracy F.*, 2023 WL 8614065, at *6 (finding articulation error to be harmless). "[N]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th

Cir. 2005) (internal quotation marks and citation omitted). "[A] reviewing court must uphold even a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Garland v. Ming Dai*, 141 S. Ct. 1669, 1679 (2021); *see also*, *generally*, *Shineski v. Sanders*, 129 S. Ct. 1696, 1706 (2009).

In the case presented, Plaintiff does not allege a deprivation of substantial rights, meaning he must show that any articulation error was prejudicial to him. Rather than focusing solely on the alleged articulation deficiencies, the Court discusses those errors in the context of the ALJ's overall analysis of mental and physical RFC findings that Plaintiff asserts were prejudicial. In that context, the Court agrees that the articulation errors contributed to a decision that is unsupported by substantial evidence on the whole.

### B. The ALJ Erred When Evaluating Certain Opinions Supporting Plaintiff's Psychological Limitations

Plaintiff has severe mental impairments for which the ALJ assessed the following mental RFC limitations:

> The claimant should avoid fast past work such as assembly line work and strict hourly production quotas. The claimant can have occasional but superficial interaction with co-workers and supervisors, with superficial defined as that which is beyond the performance of job duties and job functions for a specific purpose and short duration. The claimant should avoid tandem work and interaction with the public and can tolerate occasional changes and occasional decision-making in a position in which any changes are well-explained in advance and provide a normal ordinary course of time to adjust to such changes. The claimant would be off task 5 percent of the workday.

(R. 103).

In formulating that mental RFC, the ALJ considered the opinions contained in a psychological consultative examination ("CE") report, the opinions of two non-examining agency consultants, and the opinion of a mental health treatment provider. The CE report included two opinions that arguably were work-preclusive, but the ALJ did not incorporate

them. The ALJ also rejected the work-preclusive opinions of Plaintiff's treatment provider. And, despite deeming the opinions of the agency consultants to be fully "persuasive," she modified those opinions in a way that resulted in fewer limitations. The Court finds reversible error because the ALJ did not fully articulate the consistency and supportability factors with respect to those opinions, and did not otherwise adequately explain the basis for her critical mental RFC decisions.

### 1. The Consultative Examiner's Psychological Opinion

On September 10, 2021, Plaintiff underwent a psychological consultative examination by Valerie Budervic, Psy.D.[3] Dr. Budervic diagnosed Plaintiff with Generalized Anxiety Disorder, with panic attacks, with Attention-Deficit/Hyperactivity Disorder (per history), and Mild Cannabis Use disorder and Mild Opioid Use Disorder. (R. 674). The CE report is based on the examiner's clinical interview, and focuses more on the assessment of broad "Paragraph B" areas of functioning than on definitive RFC limitations. Nevertheless, with respect to concentration, persistence and pace, the CE examiner offered the following work-preclusive opinion under a section entitled "Functional Assessment/Medical Source Statement": "[T]he claimant does not exhibit the consistent ability to sustain concentration and persist in work-related activities at a reasonable pace at this time due to impaired functioning caused by behavioral health conditions." (R. 675). On the next page of the report, the CE examiner offered a second opinion regarding Plaintiff's functional abilities "in dealing with normal pressures in a

---

[3]The consultative examination report identifies the examining psychologist and author of the report as Valerie Budervic, Psy.D. (R. 676). However, a transmittal sheet identifies the transmitting psychologist as Bob Stinson, Psy.D. (R. 677; *see also, e.g.* R. 67, 87). The ALJ does not refer to the CE examiner by name, but uses a male pronoun in discussing the content of the CE report.

9

competitive work setting" that could be interpreted as work-preclusive, but is somewhat equivocal:

> [P]sychologically, the claimant exhibits anxiety, ADHD, and depression, and may not have adequate coping strategies to implement while in the work field or in his daily life. Thus, the claimant exhibits some limitations with his ability to deal with normal pressures in a competitive work setting and would benefit from learning and implementing appropriate coping strategies or being permitted to take additional short breaks while at work if mental health symptoms worsen while on the job.

(R. 676).

After summarizing the CE examiner's opinions, the ALJ offered this analysis of their consistency and supportability:

> This … opinion is generally consistent with mild to moderate mental limitations and persuasive to the extent they are consistent with the specific limitations expressed herein. However, the limitation regarding concentration, persistence, and pace is not entirely consistent with the record or the examiner's findings indicating intact attention and concentration.

(R. 106). The ALJ referenced the CE's findings of "intact memory," noting Plaintiff's ability "to complete basic math and memory tasks," along with the ability "to understand the examiner," with an estimated "average intelligence and fair insight." (R. 102 citing Exhibit 8F). But the ALJ only briefly acknowledged the examiner's observations that Plaintiff had "deficits with focus" during the clinical interview. (*Id.*)

Plaintiff attacks the ALJ's articulation of the "supportability" factor with respect to the CE examiner's opinions. The Court agrees that the ALJ failed to adequately discuss supportability, and that the error was prejudicial with respect to Plaintiff's limitations in concentration, persistence and pace.

With respect to that functional area, Dr. Budervic objectively observed that despite her ability to redirect Plaintiff and his ability to complete "basic math and memory tasks,"

10

(R. 674),[4] he "had problems concentrating" and "often seemed to lose focus." (R. 672; *see also* R. 674, noting observed "deficits with focus."). The CE examiner based her opinion regarding Plaintiff's inability to sustain concentration, persistence and pace in the workplace on a combination of her clinical observations and Plaintiff's reported history of ADHD and focus deficits, including problems sustaining concentration and focus due to reportedly "intense anxiety and panic attacks." (*Id.*) During the exam, Plaintiff stated that he could perform "household chores, cook, run errands, grocery shop, manage money, pay bills, read, use the internet, exercise, and attend regular doctor appointments" but he also reported struggling with those tasks when experiencing anxiety. (R. 675). Plaintiff similarly reported difficultly driving "during periods of time when his anxiety is intense and severe." (*Id.*) And, while admitting he had never worked with accommodations, Plaintiff also reported that he had left several jobs based on past difficulties with focus, memory and concentration. (*Id.*) The ALJ reversibly erred because she did not adequately explain why she rejected all of the support expressly relied on by the CE examiner for work-preclusive limitations in concentration, persistence and pace.

The ALJ also offers no explanation at all for her rejection of the CE examiner's opinion that Plaintiff might require additional breaks on the job in order to deal with work stress. The VE testified that the need for two additional 15 minute breaks taken "randomly throughout the day" would be work preclusive. (R. 48). Standing alone, however, the ALJ's lack of articulation regarding work breaks might not provide grounds for reversal.

_____

[4]The ALJ's brief citation to the examiner's finding of "intact attention and concentration" is technically accurate insofar as the CE used that phrase to describe Plaintiff's ability to perform simple word and mathematical tests. (R. 672). But considering the record as a whole, pulling the "intact attention and concentration" phrase out of context without additional discussion does not adequately address supportability.

After all, the CE examiner's opinion regarding breaks was equivocal, suggesting that Plaintiff's ability to learn "coping strategies" might eliminate any need for additional breaks, and that such breaks would only be required if Plaintiff's mental health symptoms worsened while on the job. Still, because remand is required for other errors, the ALJ should further explain her analysis of the CE examiner's work stress opinions.

### 2. The Nonexamining Agency Psychologists' RFC Opinions

The Court also finds prejudicial articulation error regarding the ALJ's assessment of the opinions of two non-examining consulting psychologists, Drs. Haskins and Warren, who reviewed the CE report and other mental health records on initial review and on reconsideration. Both provided RFC opinions on a standard Psychiatric Review Technique Form ("PRTF"), which form includes a list of all mental health evidence that was considered. (*See* R. 52). Dr. Haskins found mild limitations in Plaintiff's ability to understand, remember or apply information, and moderate limitations in his ability to interact with others, concentrate, persist or maintain pace, and adapt or manage oneself. (R. 54).

Evaluating the CE report, Dr. Haskins noted that Plaintiff was "easily redirected." (R. 58). Unlike the ALJ who failed to discuss the supportability of the CE examiner's opinions, Dr. Haskins specifically rejected the work-preclusive limitations in concentration, persistence and pace in part on grounds that the examiner relied too heavily on the Plaintiff's subjective reports. (R. 56). Dr. Haskins opined that Plaintiff "can complete short cycle tasks in a setting that does not have fast pace demand where [he] can work away from the distractions of others." (R. 58). To accommodate Plaintiff's social limitations, Dr. Haskins opined that Plaintiff should have "[n]o contact with the general

public," and should "interact with coworkers and supervisors on an occasional and superficial basis." (*Id.*)

Rather than suggesting additional breaks as the CE examiner did, Dr. Haskins opined that Plaintiff "can adjust to minor changes in the work setting and still complete an ordinary routine consistently on an independent basis." (R. 58). Yet Dr. Haskins added that "[m]ajor changes" should be "introduced in advance and then gradually introduced to allow the claimant time to adjust to the new expectations." (*Id.*) On reconsideration, Dr. Warren offered identical opinions. (R. 76-81).

The ALJ articulated her analysis of the consistency and supportability factors of the nonexamining psychologists' "persuasive" opinions as follows:

> The State agency psychological consultant opinions finding limitations consistent with those adopted herein are persuasive as they are also consistent with the evidence, which indicates that the claimant has difficulty with attention and concentration, as well as social interaction and is easily overwhelmed.

(R. 106). Without further explanation, however, the ALJ combined the two work-stress limitations into one: "Because he is easily overwhelmed, changes should be well-explained, and he should be allowed normal time to adjust to changes." (R. 105). As written, the RFC only limits Plaintiff to "occasional" changes with adjustment in a "normal ordinary course of time" - *without* allowing extra time for "major" changes. (*See* R. 103).

Plaintiff argues that the ALJ's mental RFC is inconsistent with the consultants' opinions that major changes should be "introduced in advance and then gradually introduced" over time. On the record presented, the Court agrees. Under the RFC formulated by the ALJ, Plaintiff has no limitations to simple or repetitive tasks, and may be required to work in a job that requires major changes up to one third of the time, without any accommodation or extra time to adjust to such changes. Social security cases are

often very fact-specific.[5] Greater articulation of the supportability factor, and/or a more thorough explanation of the mental RFC as determined, might have avoided this prejudicial error. *See, e.g., Damon J. v. Comm'r*, No. 3:23-cv-36-MJN-SKB, 2024 WL 193658 at *9 (S.D. Ohio Jan 18, 2024), report and recommendation adopted at 2024 WL 1257257 (S.D. Ohio Mar. 25, 2024) (affirming as "reasonable" the ALJ's translation of RFC opinions that Plaintiff required "set routine where major changes are explained in advance and gradually implemented to allow the claimant time to adjust" into mental RFC for "simple, routine, and repetitive tasks" with "few, if any, workplace changes," based on substantial support in the record, and ample articulation by the ALJ). Because the ALJ here did not explain or articulate the basis for her differing mental RFC opinions, her analysis fails to build "an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011).

Plaintiff also complains about the way in which the ALJ defined the consulting psychologists' opinion that Plaintiff should be limited to "superficial" interactions with coworkers and supervisors. The translation of "superficial" interactions into vocationally relevant terms has been the subject of numerous opinions. As the undersigned has discussed in other cases, *see Dawn M. v. Comm'r*, No. 3:24-cv-02-SKB, 2024 WL 3568859 (S.D. Ohio July 29, 2024) (appeal pending), the unpublished case law reflects an intra-district split concerning the meaning of "superficial." But in *Stephen D. v. Comm'r*, 734 F.Supp.3d 729, 738 (S.D. Ohio 2024), U.S. District Judge Douglas R. Cole adopted the reasoning of the undersigned in a published decision on the issue in this district. *See id.* (holding that "time-limited 'occasional' interactions in an unskilled work setting are

---

[5]The prejudice from the error is more apparent given the ALJ's failure to address the CE examiner's opinion that Plaintiff has significant limitations in adapting to work stress.

reasonably understood to require only surface-level interactions" consistent with "superficial.").

In accordance with *Stephen D.*, ordinarily this Court would reject Plaintiff's challenge to the definition of "superficial" on grounds that it is the prerogative of the ALJ to translate adjectives that are not otherwise defined in the DOT into vocationally relevant terms. In addition, in the absence of any other definition of "superficial," a translation to the avoidance of "tandem tasks" may be sufficient, particularly where the ALJ has also limited a plaintiff to "occasional" interactions in unskilled work. But in this case, the ALJ's definition of "superficial" as "that which is beyond the performance of job duties and job functions for a specific purpose and short duration" is particularly odd, to the point of being illogical. (R. 103). Frankly, the Court wonders if the ALJ intended to define superficial interaction as conversation that is *confined to* the topic of unskilled job duties and for a specific job-related purpose and short duration, rather than defining superficial interaction as all conversations that extend "*beyond*….job duties," so long as the conversations are of "short duration." On remand, the ALJ should reevaluate this definition.

Last, Plaintiff complains that the ALJ's mental RFC does not sufficiently incorporate the consultants' opinions that he work "away from others." The Court finds no reversible error in this regard. The ALJ expressly incorporated a limitation to "avoid tandem work and interaction with the public." (R. 103). That limitation reasonably translates the RFC opinion to avoid "work with others." To the extent that Plaintiff would argue that Dr. Haskins' opinion might be construed as requiring some greater level of "work alone" time, the ALJ's mental RFC falls within a reasonable "zone of choice." *See also*, *generally*, *Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 157, 2009 WL 2514058,

15

at *7 (6th Cir. 2009) (holding that an ALJ "is not required to recite the medical opinion of a physician verbatim" when formulating the RFC).

### 3. The Opinion of Messeret Tewolde, FNP

The last opinion as to which Plaintiff claims articulation error was authored by Messeret Tewolde, FNP, a treating provider who saw Plaintiff for medication management of his psychological symptoms. The Court finds no articulation or other reversible error with respect to the ALJ's analysis of Nurse Tewolde's opinions.

Nurse Tewolde provided her opinions on a Mental Impairment Questionnaire dated May 4, 2023. (R. 733-735). On the questionnaire, Nurse Tewolde checked boxes opining that Plaintiff would be off-task due to either physical[6] or psychological problems for 20% or more of each day, and would miss work more than three times a month. (R. 733). Consistent with the CE examiner, Nurse Tewolde further opines that Plaintiff has "extreme" (work-preclusive) limitations in concentration, persistence and pace. She also found extreme limitations in his overall ability to relate to and work with supervisors, co-workers, and the public (R. 734-735). The ALJ rejected her opinions as unpersuasive:

> This opinion is not persuasive as it is not consistent with the evidence, which documents the claimant's improved mental health symptoms with medication compliance and the ability to engage in a wide range of activities of daily living. The provider's own treatment notes do not support this level of limitation.

(R. 106).

Plaintiff complains that the ALJ's analysis is too "vague" due to the ALJ's failure to cite to specific pages in the record. And he cites to a half dozen pages that he suggests support Nurse Tewolde's opinions. But the ALJ's opinion must be read as a whole. And

---

[6]Nurse Tewolde specifically cited Plaintiff's back pain as exacerbated by his psychiatric condition. (R. 733).

in that opinion, the ALJ does cite to pages of the mental health records that undermine Nurse Tewolde's opinions.

In addition, the notes cited by Plaintiff do not mandate adoption of work-preclusive limitations. Four of the six notes are dated within two months of Plaintiff's onset of disability, during a time period when new medications were being prescribed. Consistent with the ALJ's analysis, the records reflect some improvement. (*See* R. 618 (11/24/20 reports not doing well but not able to explain in appointment so follow up scheduled); R. 615 (12/4/20 reports may lose job due to increased anxiety, requests new medication, Effexor prescribed); R. 617 (12/8/20, discussed symptoms and new medication, follow up scheduled); R. 614 (12/22/20 reports new medication working "a little," wants higher dose for better effect, slight improvement with anxiety and sleeping better). The other two clinical notes cited by Plaintiff were also cited by the ALJ. While they reflect some symptoms, they do not support work-preclusive limitations. (*See e.g.*, R. 596 (7/13/21 note stating "compliant on medication and doing okay" despite continued struggles with anxiety); R. 603 (5/18/21 same, noting "stable and compliant on medication and doing okay"),

Unlike the ALJ's failure to articulate supportability with respect to other psychological opinions, the ALJ fleshed out her "supportability" analysis for Nurse Tewolde's opinions by pointing to treatment notes that undermined those opinions. The ALJ's conclusion that the treatment notes show "stable mood and improved symptoms with medication compliance," (R. 102), is a reasonable interpretation of the cited records.

> Mental health treatment notes from mid-2021 indicate that the claimant was stable and complaint with his medication and was doing well although he still struggled with some anxiety (Exhibit 7F/3, 5, 9, 12 [R. 594, 596, 600, 603]). About a year later, the claimant reported doing well on the combination of Buspar and Prozac indicating that he felt "more balanced" (Exhibit 9F/8 [R. 685]). The claimant presented to his mental health provider

in April 2023 for a follow-up assessment. It was noted that he had missed
his prior appointment and was out of medication (Exhibit 10F, R. 725).

(R. 105) (*See*, *also*, *e.g.*, R. 594, 8/13/21 note assessing mood "stable" and that Plaintiff
is "[d]oing well."; R. 685 8/18/22 note "doing well with Prozac buspar combination. He
feels more balance[d]."; R. 724, 4/5/23 seroquil has been effective for insomnia; 3/31/23
note stating plaintiff "did not show up for appt last time" and "out of medication."). Because
the ALJ's interpretation falls within a reasonable zone of choice and adequately discusses
both consistency and supportability, her analysis of Nurse Tewolde's opinions reflects no
reversible error.

### C. The ALJ's Mixed Assessment of Plaintiff's Physical Limitations

Plaintiff argues that the ALJ committed multiple errors when she determined his
physical RFC, including articulation error. On the whole, the Court is less troubled by the
ALJ's assessment of Plaintiff's physical RFC. But the ALJ should reevaluate on remand
her determination that Plaintiff would be off task 5% of the day; and should avoid only the
most extreme loud noises or bright lights.

### 1. The State Agency Physicians' Administrative Findings

Plaintiff again criticizes the ALJ for failing to discuss the "supportability" of the
opinions of two state agency reviewing physicians (Drs. McKee and Mikalov) who
evaluated Plaintiff's medical records at the administrative level. Upon initial review, Dr.
McKee determined that Plaintiff had no exertional limitations at all and only a few non-
exertional limitations, opining that he should "never" climb ladders/ropes/ and scaffolds,
should avoid concentrated exposure to noise and should avoid all exposure to
unprotected heights and hazardous moving machinery. (R. 56-57). At the reconsideration
level, Dr. Mikalov endorsed the same non-exertional limitations but limited Plaintiff to work
at the medium exertional level, finding he can occasionally lift or carry up to 50 pounds

and frequently lift or carry 25 pounds. (R. 78-79). In reviewing the two opinions, the ALJ wrote:

> The undersigned does not find that the State agency opinions are entirely consistent with the evidence given the nature and extent of the claimant's symptoms, which warrant limiting him to work at the light exertion level. Additionally, the undersigned has accounted for the combination of the claimant's impairment related symptoms in finding that he would be off task five percent of the workday. Thus, the State agency medical opinions are not persuasive.

(R. 106).

The ALJ's articulation of the "supportability" factor of the two nonexamining agency physicians' RFC opinions was almost non-existent,[7] but that error alone does not necessarily warrant reversal because it was not prejudicial. The ALJ's rejection of the consulting physicians' physical RFC opinions benefited Plaintiff insofar as the ALJ limited him to a more restricted exertional range of light work.

But  Plaintiff also challenges the ALJ's determination, ostensibly in connection with her evaluation of the physicians' opinions, that he would be off task "5 percent of the workday." (R.  106). Plaintiff complains that the off-task figure "appears to have no foundation in the record whatsoever and appears to have been invented whole cloth by the ALJ." (Doc. 8, PageID 792). The Court agrees that further explanation of the limitation

_____

[7]The two agency physicians listed the medical records that they reviewed. At times, an ALJ's  discussion of the same records can serve as sufficient articulation of both supportability and consistency factors. *See Damon J. v. Comm'r of Soc. Sec.*, 2024 WL 193658 at *6-7; *Howard H. v. Comm'r of Soc. Sec.*, No. 2:20-cv-4932, 2022 WL 765217, at *5 (S.D. Ohio Mar. 14, 2022) (explaining that when one doctor bases his opinion on another's findings that are also in the record, overlap between "consistency" and "supportability" is inevitable); *see also Sasha M. v. Comm'r of Soc. Sec.*, No. 2:22-CV-2101-EAS-KAJ, 2023 WL 1793536, at *7 (S.D. Ohio Feb. 7, 2023), *report and recommendation adopted*, No. 2:22-CV-2101, 2023 WL 6383450 (S.D. Ohio Sept. 29, 2023) ("[T]he ALJ cited to the same records upon which the state agency psychologists based their opinions....") (internal quotations omitted).

is required. The ALJ tied the limitation to her review of the non-examining physicians' physical RFC findings but neither opined on any such limitation.

It is possible that the ALJ based the off-task limitation on Plaintiff's mental impairments or headaches. Plaintiff's subjective testimony arguably supports the limitation, as do many of the psychological opinions. But the only evidence of a specific percentage of off-task limitation came from Nurse Tewolde, who opined that Plaintiff would be off-task 20% of the workday. The ALJ's vague reference to including an off-task limitation due to Plaintiff's "combination of …impairment related symptoms" requires further explanation.

### 2. The Consulting Examining Physician

The Court rejects Plaintiff's assertion of error regarding the opinions of a consulting examining physician. Dr. Romero evaluated Plaintiff on August 11, 2021. While he found virtually no physical impairments on examination, he opined that Plaintiff can perform "[l]ess than sedentary, no work" based on Plaintiff's subjectively reported history of migraines and mental impairments. He explained the basis of his opinions as follows:

> His physical examination here is essentially within normal limits. He would not be able to keep a full time job and part-time job because of his difficulty with his mental status and several episodes of migraine headaches that he has during the course of the month. He had a back injury approximately 8-10 years ago when he was lifting a sofa. He was evaluated. He may be able to do sedentary work but with these episodes he probably could not tolerate as well.

(R. 586).

The ALJ rejected Dr. Romero's opinion as "not persuasive" for the following reasons:

> It is not supported by the examiner's clinical findings, which the examiner noted were within normal limits. His opinion is based solely on the claimant's reported subjective complaints and not objective, physical findings. Moreover, this opinion is not consistent with the evidence as a whole, which

20

> indicates that the claimant's migraine headaches are improved and stable
> with Botox injections.

(R. 106). Unlike the ALJ's analysis of other opinions, the foregoing analysis reflects a clear articulation of both "supportability" and "consistency" factors. In the absence of articulation error,[8] Plaintiff asserts that the ALJ erred by discounting Dr. Romero's reliance on Plaintiff's subjective reports because mental health impairments and migraine headaches are not "readily amenable to traditional substantiation." (Doc. 8, PageID 787).

But the fact that an impairment is not susceptible to diagnosis by a laboratory test does not mean that a plaintiff's subjective complaints about the effects that impairment must be accepted wholesale. Plaintiff relies heavily on an unpublished case, *Saunders v. Comm'r*, No. 3:14-cv-97-MJN, 2015 WL 6858323 (S.D. Ohio, September 8, 2015), in which this Court reversed based on an ALJ's failure to provide "good reasons" for discounting a plaintiff's treating physician's opinion about the limiting effects of his migraines.[9] In that case, however, the ALJ had grossly mischaracterized the record, stating that the physician's clinical records failed to support his opinions. In fact, those records revealed "repeated documentation of Plaintiff's headaches and related symptoms and not, as found by the ALJ, 'relatively normal examination findings.'" *Saunders*, 2015 WL 6858323, at *5. The ALJ in *Saunders* similarly misstated – without citation - that the severity of the plaintiff's headaches was unsupported by other evidence. In reality, "many, if not all, of Plaintiff's providers diagnosed his headaches and remarked upon their severity." *Id*. Unlike the *Saunders case,* in which a treating physician relied on copious

---

[8]Plaintiff argues that the ALJ committed articulation error for six other opinions but not as to Dr. Romero's opinion.
[9]Under a former regulation applicable to claims filed prior to March 27, 2017, an ALJ was required to give "controlling weight" to the opinions of a treating physician, and to provide "good reasons" if he failed to do so. See generally, *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009).

clinical records that documented the effects of the plaintiff's migraines over time, in this case Dr. Romero cited no records and appears to have relied exclusively on Plaintiff's subjective reports during a one-time clinical exam that recorded only normal findings.[10]

Plaintiff further complains that the ALJ "provides no explanation" for her statement that his migraine headaches are "improved and stable with Botox injections." (R. 106). But the Court discerns no inaccuracies in the ALJ's discussion of his treatment history regarding migraines. (R. 104-105). The ALJ pointed out that after reporting to Dr. Romero in August 2021 that he had suffered from intractable headaches for many years, Plaintiff did not again mention his migraine headaches until April 2022, when he saw a provider for sinusitis and medication management of his anxiety. (R. 104). And the ALJ specifically cited to the portion of the April 2022 record in which Plaintiff reported that his treatments for "migraines are [e]ffective with botox [and] has been stable but did see [commercial] for new medication he wanted to ask about." (R. 105, citing R. 704). In short, while there is no dispute that Plaintiff's migraines are severe, the ALJ adequately articulated and substantially supported her reasons for rejecting Dr. Romero's unsupported acceptance of Plaintiff's subjective complaints. *See also, e.g., Karen H. v. Comm'r of Soc. Sec.*, No. 2:20-cv-6112-EAS-SKB, 2022 WL 3151894, at *8 (S.D. Ohio Aug. 8, 2022) (physician's notes showed significant improvement in severity of migraine symptoms with treatment); *James A. v. Comm'r of Soc. Sec.*, No. 2:21-cv-702-MHW-SKB, 2022 WL 2980532, at *5-7 (S.D. Ohio, July 28, 2022) (R&R affirming ALJ's evaluation of symptoms from migraines as nondisabling, based on ALJ's reasonable evaluation of clinical records in combination

---

[10]Separately, the ALJ discounted the Plaintiff's subjective opinions, in part based on his "wide range of activities of daily living" and a report that he had been able to work part-time. (*See* R. 105, citing R. 725).

with evaluation of subjective complaints), adopted at 2022 WL 3359274 (S.D. Ohio Aug. 15, 2022).

### 3.  The Sound and Light Limitation

The last RFC limitation to which Plaintiff objects is the ALJ's determination that he should avoid "concentrated exposure to extreme loud noise (such as jackhammer or heard at a rock concert) [and] extreme bright lights (such as flood lights)." R. 103). The ALJ attributed the limitation to her "consideration of his headaches, as well as the overall impact of his obesity and potential for deconditioning." (R. 103, 105).[11] Plaintiff contends that the idea "that any noise shy of a jack-hammer or any light less than that produced by a flood light would *fail to trigger* the phonophobia and photophobia indisputably associated with Plaintiff's migraine headaches is not only unexplained …and unsupported by the evidence of record, it is wholly arbitrary." (Doc. 8, PageID 789, emphasis added). Notably, Plaintiff testified that he experiences sensitivity to sound and light *when* he has migraines, and that he seeks a dark, quiet room at those times. Plaintiff did not testify, and does not point to evidence, that his migraines are *triggered* by sounds and/or lights. Nor does he point to medical evidence that support RFC limitations to less "extreme" sounds and lights. Then again, the ALJ also fails to explain any rational basis for limiting Plaintiff's exposure to only the most "extreme" types of noise of bright lights. On remand, the ALJ should reevaluate this limitation.

### III. Conclusion and Order

In light of the combination of errors discussed above, the ALJ's decision is unsupported by substantial evidence and remand for further proceedings is warranted. A

---

[11]The nonexamining consulting physicians (with whose opinions the ALJ mostly disagreed) both opined that Plaintiff should avoid concentrated exposure to sound, but made no reference to light.

sentence four remand under 42 U.S.C. § 405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher*, 17 F.3d at 175.

Therefore, **IT IS ORDERED:**

1. Defendant's nondisability finding is **REVERSED;**

2. This matter is **REMANDED** under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion;

3. This case is **CLOSED.**

<u>*s/Stephanie K. Bowman*</u>
Stephanie K. Bowman
United States Magistrate Judge

24